**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SAVE RGV, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| SPACE EXPLORATION | § | |
| TECHNOLOGIES CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

### I. INTRODUCTION

1. Save RGV brings this citizen suit against Space Exploration Technologies Corporation ("SpaceX" or "Defendant"), under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, also known as the Clean Water Act ("CWA" or "Act"). Save RGV asks this Court to enter declaratory and injunctive relief, impose civil penalties, award costs, including attorney and expert witness fees, and grant other appropriate relief to abate SpaceX's recurring, unpermitted discharges of untreated industrial wastewater from the deluge system at the SpaceX Boca Chica Launch Site into waters of the United States. *See* 33 U.S.C. § 1365(a)(1).

### II. JURISDICTION & VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

3. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c), because the

SpaceX Boca Chica Launch Site and SpaceX's unauthorized discharges are located in and have occurred in Cameron County, Texas, which is within the Brownsville Division of the Southern District of Texas.

### III.   NOTICE

4.  Save RGV has complied with the CWA's statutory notice requirements. See 33 U.S.C. § 1365(b)(1)(A). On June 4, 2024, in a letter sent by certified mail to Ms. Gwynne Shotwell, President and Chief Operating Officer ("C.O.O.") of SpaceX, and to Corporation Service Company, SpaceX's registered agent in Texas, Save RGV gave SpaceX notice of the violations identified in this Complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

5.  On July 19, 2024, in a second letter sent by certified mail to Gwynne Shotwell, President and C.O.O. of SpaceX, Kathy Lueders, General Manager of the SpaceX Boca Chica Launch Site, and Corporation Service Company, SpaceX's registered agent in Texas, Save RGV gave SpaceX notice of the additional violations, also identified in this Complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 2**.

6.  Save RGV also mailed a copy of both notice letters by certified mail to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator for EPA Region 6, the U.S. Department of Justice, the State of Texas through the Attorney General of Texas, and the Executive Director of the Texas Commission on Environmental Quality ("TCEQ").

7.  Sixty days have passed since Save RGV served SpaceX and federal and state agencies with both the first and second notice letters for the violations described in this Complaint.

8.  Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in Save RGV's notice letters and alleged in this Complaint.

9.  The violations identified in the notice letters are continuing at this time and are reasonably likely to continue in the future.

## IV.   PARTIES

### *Plaintiff Save RGV*

10. Plaintiff Save RGV is a Texas non-profit corporation that advocates for environmental justice and sustainability and the health and well-being of the Rio Grande Valley community.

11. Save RGV is a "citizen" within the meaning of 33 U.S.C. § 1365(g), because it is an organization with an interest that is adversely affected, and its members have an interest that is adversely affected by SpaceX's CWA violations.

12. Save RGV includes residents of South Texas, specifically residents who swim, boat, fish, birdwatch, and otherwise recreate in and around the waterways near the SpaceX Boca Chica Launch Site including, but not limited to, the South Bay of the Lower Laguna Madre—waterways that are impacted by the activities that are the subject of this Complaint.

13. SpaceX's unpermitted discharges of untreated industrial wastewater degrade water quality and harm aquatic life in these waters and thus impair Save RGV's members' use and enjoyment of the waters. SpaceX's industrial discharges from its deluge system are ongoing and continuous, occurring regularly during each launch and each static fire test.

14. The relief sought by this Complaint will redress the harms to Save RGV caused by Defendant's unlawful discharges. Save RGV's injuries are unlikely to be redressed except by an order from this Court requiring Defendant to take immediate and substantial action to stop the unpermitted discharges, and to comply with other relief that this Court deems necessary.

15. If successful, this action also will result in civil penalties that will deter future violations that would threaten Save RGV's members' use and enjoyment of the area where Defendant's violations have occurred.

16. Save RGV suffers actual, concrete injuries that are fairly traceable to Defendant's violations and are redressable by this Court. Save RGV has no other adequate remedy at law.

*Defendant Space Exploration Technologies Corporation*

17. SpaceX owns and operates the SpaceX Boca Chica Launch Site, a rocket launch facility located in Cameron County, Texas near the town of Boca Chica, Texas on the Texas Gulf Coast.

18. SpaceX is a for-profit corporation and is therefore a "person" under CWA Section 502(5), 33 U.S.C. § 1362(5), and subject to citizen suit enforcement under the CWA. *See* 33 U.S.C. § 1365(a)(1).

19. SpaceX's registered agent is listed as Corporation Service Company / dba CSC – Lawyers Incorporating Service Company, whose mailing address is 211 E. 7th Street, Suite 620, Austin, Texas 78701.

V.   APPLICABLE LAW

*The Clean Water Act*

20. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA. 33 U.S.C. § 1311(a).

21. The CWA establishes the National Pollutant Discharge Elimination System ("NPDES") program under which the Administrator of the EPA or an authorized State can issue NPDES permits, which allow the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. §

1342. In Texas, the TCEQ has the authority to issue NPDES permits through the TPDES permitting program.

22. TPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Each "discharge of any pollutant" that is not authorized by a permit violates the CWA. 33 U.S.C. §§ 1311(a), 1365(f).

23. Each violation of the CWA is grounds for enforcement action, and a violator is subject to both federal and state action for failure to comply with the CWA. *See* 33 U.S.C. §§ 1311(a), 1365(a), (f).

### *Citizen Enforcement*

24. The CWA authorizes any citizen to file a civil action against any person who is in violation of an "effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). The term "effluent standard or limitation under this chapter" includes an unauthorized discharge under subsection 1311(a). *Id.* § 1365(f).

25. The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, 60 days before filing a citizen suit, the citizen must give notice of the violation to the alleged violator, the EPA, and the State in which the violation occurs. 33 U.S.C. § 1365(b)(1)(A). Sixty days after giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The purpose of providing notice to the alleged violator is "to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987); *see also Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it

'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

26. Second, the CWA bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B).

27. In addition, the CWA precludes a civil penalty action under the citizen suit provision where the EPA is prosecuting under subsection 1319(g); the State is prosecuting under a comparable State law; or for which the EPA or the State have issued a final order not subject to further judicial review and the violator has paid a penalty assessed under subsection 1319(g) or comparable State law. 33 U.S.C. § 1319(g)(6)(A). The limitations in subsection 1319(g)(6)(A) do not apply, however, if the citizen suit was filed prior to the commencement of one of these actions or notice was given prior to the government commencing action, and the citizen suit was filed before the 120th day after the notice was given. *Id.* at § 1319(g)(6)(B).

28. CWA Section 505, 33 U.S.C. § 1365, empowers citizens to seek remedies for unpermitted discharges violating Section 301 of the CWA, 33 U.S.C. § 1311. This section also authorizes citizens to seek injunctive relief.

29. For violations occurring after November 2, 2015, where penalties are assessed after December 23, 2020, each separate violation of the CWA subjects the violator to a penalty of up to $56,460 per day per violation, pursuant to Sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation). Section 505(d) of the CWA, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney fees and expert witness fees.

## VI.  FACTS

30. Save RGV fully incorporates **Exhibit 1** and **Exhibit 2**¸ including all attachments to Exhibits 1 and 2, into this Complaint.

### *SpaceX Activities*

31. SpaceX operates its Starship/Super Heavy Launch Vehicle Program at the SpaceX Boca Chica Launch Site in Cameron County, Texas, which includes the vertical launch area ("VLA").

32. SpaceX's Boca Chica Launch Site is surrounded by Boca Chica State Park. Boca Chica State Park is used for swimming, snorkeling, surfing, fishing, bird watching, and kite surfing. Boca Chica State Park is owned by Texas Parks and Wildlife Department ("TPWD") and managed through a lease with U.S. Fish and Wildlife Service ("USFWS") in conjunction with the Lower Rio Grande Valley National Wildlife Refuge. The Refuge is managed for wildlife conservation and provides the public with several opportunities for free, wildlife-dependent recreation, such as fishing, wildlife observation, photography, environmental education and interpretation, and other special organized events. The National Wildlife Refuge also includes Boca Chica Beach.

33. Also nearby SpaceX's Boca Chica Launch Site, is the Brazos Island State Park, located directly to the north of Boca Chica Beach and at the south end of the Lower Laguna Madre. Brazos Island State Park is used for swimming, surfing, ocean fishing, camping, and nature study. The Park is owned and managed by TPWD.

34. On April 20, 2023, SpaceX conducted its first test launch of the Starship/Super Heavy rocket ("Starship Flight 1"). During the launch of Starship Flight 1, the concrete launch pad exploded, resulting in a large debris field and extensive damage to nearby sensitive ecosystems.

35. Following the Starship Flight 1 launch, SpaceX took steps to reinforce its launch pad foundation and install steel plates over the foundation. SpaceX also implemented a deluge

system—a water-cooling element that would be activated during each launch event to help protect the steel plates and avoid another explosion of the concrete foundation.[1]

36. SpaceX intends to activate its deluge system during each launch of the Starship/Super Heavy rocket and with each static fire engine test.[2]

37. When activated, the deluge system pushes water up from ground tanks through holes in a large steel plate. The water flows at high pressure over the edge of the plate and into the surrounding area.

38. Currently, SpaceX has capacity to discharge up to 361,000 gallons per Super Heavy static fire test, launch, or landing (358,000 gallons in the deluge system tanks plus 3,000 gallons of detonation suppression water), with plans to add additional water tanks, in order to increase the maximum volume of water SpaceX may use per event to as much as 422,000 gallons.

39. During static fire tests and rocket launches, the extreme heat causes ablation of metals, such as aluminum, arsenic, barium, copper, mercury, nickel, thallium, and zinc, and with each activation, the amount of metal ablated and subsequently deposited outside the VLA will accumulate.

40. SpaceX is currently authorized to launch Starship up to five times per year and Starship/Super Heavy (where Starship is attached as the second stage of the launch vehicle) five times per year. SpaceX is currently authorized to conduct ten Starship landings and five Super Heavy landings. Landings could occur at the VLA, in which case SpaceX may also activate the

---

[1] Additional components include a fire suppression system, which is mentioned in this Complaint, because the detonation suppression water is available to the deluge system.
[2] A "static fire engine test" is a pre-flight test to verify engine control and performance, during which SpaceX conducts a mission rehearsal with propellants (referred to as a "wet dress rehearsal") and the launch vehicle engines are ignited temporarily.

deluge system, meaning it would activate the deluge system twice during the same launch/landing operation.

41. SpaceX has also requested authorization from FAA to increase launches and landings to 25 annual Starship/Super Heavy launches, up to 25 annual landings of Starship, and up to 25 annual landings of Super Heavy, with authorization for the landings to occur at the VLA.

42. Each launch is preceded by at least one and sometimes multiple static fire tests.

43. SpaceX first tested its deluge system on July 28, 2023, and conducted static fire tests on August 6, 2023, August 25, 2023, October 20, 2023, December 20, 2023, December 29, 2023, April 5, 2024, May 8, 2024, May 29, 2024, and October 8, 2024.

44. SpaceX first used the deluge system during a launch that occurred on November 18, 2023 (Starship Flight 2).  It again used the deluge system during a launch that occurred on March 14, 2024 (Starship Flight 3) and again on June 6, 2024 (Starship Flight 4), during which it activated the deluge system twice.

45. Each activation of the deluge system constitutes unpermitted discharges of industrial wastewater into waters of the United States and are violations of the Clean Water Act.

## VII.   CLAIM FOR RELIEF

46. Save RGV incorporates each and every allegation set forth above.

47. On numerous occasions since April 20, 2023, SpaceX violated Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA by discharging pollutants from the deluge system, including on July 28, 2023, August 6, 2023, August 25, 2023, October 20, 2023, November 18, 2023, December 20, 2023, December 29, 2023, March 14, 2024, April 5, 2024, May 8, 2024, May 29, 2024, June 6, 2024, and October 8, 2024, to waters of the U.S. without a permit issued under Section 402 of the CWA.

48. Each separate use of the deluge system without an NPDES or a TPDES permit constitutes a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

49. As of the date of this Complaint, SpaceX's violations are ongoing and likely to continue because SpaceX continues to operate its deluge system without obtaining the requisite permit authorizing the discharge of pollutants under Section 402 of the CWA.

50. As of the date of this Complaint, neither the EPA nor the State of Texas is diligently prosecuting these violations under the CWA in a court of the United States, or the State to require compliance.

51. Unless abated by an order of this Court, SpaceX's violations of the CWA will continue.

52. SpaceX's continuing commission of the acts and omissions alleged in this Complaint irreparably harms the waters of the United States in and around Boca Chica, including the South Bay of the Lower Laguna Madre.

## VIII.   PRAYER FOR RELIEF

53. Save RGV respectfully asks this Court to:

    (1) Issue a declaratory judgment stating that SpaceX has violated and is continuing to violate the Clean Water Act with its unpermitted industrial discharges as described above;

    (2) Grant appropriate injunctive relief to ensure that SpaceX take all necessary actions to prevent future violations of the CWA, including the cessation of all discharges from the deluge system unless authorized by an NPDES or a TPDES permit issued under Section 402 of the CWA and in compliance with application requirements of the CWA;

(3) Retain jurisdiction over this matter until such time as SpaceX has come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

(4) Assess civil penalties against SpaceX of up to $56,460 per day per violation, for violations that occurred after November 2, 2015, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Pt. 19;

(5) Award Save RGV its costs, including reasonable attorney and expert witness fees, as authorized under the CWA, 33 U.S.C. § 1365(d); and

(6) Grant such other and further relief as the Court deems just and proper.

DATED: October 9, 2024.

Respectfully submitted,

*/s/ Lauren Ice*
Lauren Ice
Attorney-in-charge
State Bar No. 24092560
S.D. Tex. Bar No. 3294105
lauren@txenvirolaw.com
Marisa Perales
(*pro hac vice* motion to be filed)
State Bar No. 24002750
marisa@txenvirolaw.com
**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Counsel for Save RGV*

## EXHIBITS

Exhibit 1 –   Save RGV First Notice Letter with Mailing Receipts (June 4, 2024)
Exhibit 2 –   Save RGV Second Notice Letter with Mailing Receipts (July 19, 2024)