**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SAVE RGV, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:24-cv-00148 |
| | § | |
| SPACE EXPLORATION | § | |
| TECHNOLOGIES CORPORATION | § | |
| | § | |
| *Defendant.* | § | |

**<u>PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR
PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

I.   Introduction ............................................................................................... 1

II.   Statement of Facts ..................................................................................... 2

   A.   The Design and Nature of the SpaceX Deluge System Operations ....................... 2

   B.   SpaceX's Activation and Planned Use of the Deluge System ............................... 6

   C.   EPA and TCEQ Actions to Date ............................................................. 7

III.   Legal Framework ....................................................................................... 8

IV.   Argument ................................................................................................ 9

   A.   Plaintiff is Likely to Succeed on the Merits of the CWA Claim. ......................... 9

     i.   Plaintiff has Article III Standing. ...................................................... 9

     ii.   SpaceX is violating the Clean Water Act by discharging industrial wastewater without a NPDES or TPDES permit. ............................................. 11

     iii.   Neither enforcement action by the EPA nor the State of Texas precludes Save RGV's citizen suit. ........................................................................... 12

     iv.   Neither EPA nor TCEQ action authorize discharges in lieu of a NPDES or TPDES permit. ................................................................................. 13

     1.   Neither EPA nor TCEQ actions are final agency actions. ................................ 13

     2.   Neither EPA nor TCEQ actions constitute a NPDES or TPDES permit, nor may they authorize future discharges. ................................................ 13

   B.   Plaintiff Will Suffer Irreparable Injury Absent Injunctive Relief ........................ 16

   C.   The Balance of Harms Weights in Favor of an Injunction. ................................ 17

   D.   The Requested Injunction is in the Public Interest. ...................................... 19

   E.   The Court Should Waive the Bond Requirement. ......................................... 19

V.   Conclusion ............................................................................................... 20

## INDEX OF AUTHORITIES

**Cases**

*ADT v. Capital Connect, Inc.*, 145 F. Supp. 3d 671 (N.D. Tex. 2015)..........................................19

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................................17

*American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp.2d 230 (D.D.C.2003).............19

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987).....................................................16, 17

*Blanco v. Burton*, No. CIV.A. 06-3813, 2006 WL 2366046 (E.D. La. Aug. 14, 2006)...............18

*Canal Author. of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974) ..................2, 16

*Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) .........................................................................2

*Colorado Wild Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213 (D. Colo. 2007) ..........................19

*Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306 (5th Cir. 2021) ...............................18

*Friends of the Earth v. Brinegar*, 518 F.2d 322 (9th Cir. 1975).................................................19, 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)................10

*Gill v. Whitford*, 138 S. Ct. 1916 (2018).........................................................................................9

*High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004) ........................................17

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ...............................................9

*Idaho Sporting Cong. v. Alexander*, 222 F.3d 562 (9th Cir. 2000) ..............................................18

*Lockett v. E.P.A.*, 319 F.3d 678 (5th Cir. 2003)..........................................................................12

*Montgomery Envt'l Coal., Inc. v. U.S. EPA*, 1983 U.S. App. LEXIS 27509 (D.C. Cir. 1983)....14

*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971).......................................19

*Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722 (9th Cir. 2001)...............................17

*PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429 (W.D. Pa. 2013) ...........................15

*People ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319 (9th Cir. 1985). 19

*Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, No. C14-0476-JCC, 2014 WL
    4649952 (W.D. Wash. Sept. 16, 2014) ....................................................................................14

*Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669 (5th Cir. 1992) ................................. 10

*Save Our Cmty. v. U.S. E.P.A.*, 971 F.2d 1155 (5th Cir. 1992) .................................................... 11

*SDNOW L.P. v. Okoro*, No. 4:16-CV-2382, 2016 WL 8738401 (S.D. Tex. Aug. 10, 2016)......... 2

*Sierra Club v. Block*, 614 F. Supp. 134 (E.D. Tex. 1985) ............................................................ 16

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ................................................ 9

*Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954)................................................... 19

*W. Ala. Quality of Life Coal. v. U.S. Fed. Highway Admin.*, 302 F. Supp. 2d 672 (S.D. Tex. 2004) ............................................................................................................................................ 16

*Waterkeeper Alliance, Inc. v. United States EPA*, 399 F.3d 486 (2d Cir. 2005) .......................... 14

**Statutes**

28 U.S.C. § 1331 ............................................................................................................................. 9

33 U.S.C. § 1251 ............................................................................................................................. 8

33 U.S.C. § 1311 ........................................................................................................................ 8, 13

33 U.S.C. § 1319 .................................................................................................................. 7, 12, 13

33 U.S.C. § 1342 ............................................................................................................................. 8

33 U.S.C. § 1365 .................................................................................................................... 8, 9, 12

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................................... 1, 19

**Regulations**

40 C.F.R. § 122.44 ........................................................................................................................ 15

40 C.F.R. § 122.48 ........................................................................................................................ 15

40 C.F.R. § 123.25 ........................................................................................................................ 15

40 C.F.R. § 124.11 ........................................................................................................................ 15

40 C.F.R. § 124.12 ........................................................................................................................ 15

40 C.F.R. § 22.45 ..................................................................................................................... 7, 13

## **GLOSSARY OF ACRONYMS**

AO              Agreed Order

CAFO            Consent Agreement and Final Order

CWA             Clean Water Act

DTEA            Draft Tiered Environmental Assessment

EA              Environmental Assessment

EIS             Environmental Impact Statement

EPA             U.S. Environmental Protection Agency

FAA             Federal Aviation Administration

NEPA            National Environmental Policy Act

NOE             Notice of Enforcement

NPDES           National Pollutant Discharge Elimination System

PEA             Programmatic Environmental Assessment

TCEQ            Texas Commission on Environmental Quality

TPDES           Texas Pollutant Discharge Elimination System

TRO             Temporary Restraining Order

USACE           U.S. Army Corps of Engineers

VLA             Vertical Launch Area

WR              Written Re-evaluation

## I.    INTRODUCTION

The Plaintiff Save RGV files this motion under Federal Rules of Civil Procedure ("FRCP") Rules 65(a) and 65(b) and Local Rule 2 for:

(1) an Order temporarily restraining the Defendant SpaceX from using its deluge system—currently slated for as early October 13, 2024—until the Court can adjudicate Plaintiff's motion for preliminary injunction; and

(2) an Order preliminarily enjoining SpaceX from using its deluge system until this Court has adjudicated the merits of Plaintiff's pending claims and any supplemental claims challenging SpaceX's use of its deluge system.

Pursuant to FRCP Rule 65(b)(1)(B) and Local Rule 2, counsel for Plaintiff provided a copy of Plaintiff's Original Complaint by email to David L. Feinberg with Venable LLP, 600 Massachusetts Avenue, NW, Washington, DC 20001, who represents SpaceX, and conferred regarding this motion. Counsel for SpaceX affirmed on October 10 that they can present themselves before the Court on October 11, 2024. Counsel for Plaintiff is traveling out of state at the time of this motion, as this motion was unplanned prior to October 8, when Plaintiff's counsel learned of SpaceX's use of the deluge system and planned launch. As such, Plaintiff's counsel made a request on October 10, 2024 with the Case Manager, pursuant to Local Rule 5, to appear telephonically in any hearing that occurs on October 11. Furthermore, counsel for both parties conferred about the nature of the motion but could not agree to its disposition.

This motion is supported by the declarations of Gwyneth Lonergan, Mary Angela Branch, and Kenneth G. Teague, filed herewith, together with the exhibits and other supporting materials.

## II.    ISSUES IN DISPUTE

The issue in dispute is whether Plaintiff is entitled to a TRO or preliminary injunction to enjoin SpaceX from activating its deluge system at its Boca Chica Launch Site. The standards for

a TRO and a preliminary injunction are essentially the same. *See SDNOW L.P. v. Okoro*, No. 4:16-CV-2382, 2016 WL 8738401, at *1 (S.D. Tex. Aug. 10, 2016). A plaintiff seeking a TRO or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer immediate and irreparable harm if the TRO or injunction does not issue; (3) that the threatened harm to the movant outweighs any injury or damage the TRO or preliminary injunction may cause to the defendant; and (4) that the granting of the TRO or preliminary injunction will not disserve the public interest. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Author. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

### III.    STATEMENT OF FACTS

#### A.  The Design and Nature of the SpaceX Deluge System Operations

On April 20, 2023, SpaceX conducted its first test launch of the Starship/Super Heavy rocket, during which the concrete launch pad exploded, debris was dispersed over hundreds of acres—even outside the 700-acre potential debris study area previously assessed by the Federal Aviation Administration ("FAA") in a 2022.[1] Following this disaster, SpaceX took steps to reinforce its launch pad foundation, install steel plates over the foundation, and implement a deluge system—a water-cooling element that would be activated during each launch event to help avoid another explosion of the concrete foundation.[2] When activated, the deluge system pushes water up from ground tanks through holes in the steel plates at high pressure, which then could disperse as a part of a vapor cloud, be detained on site, or flow offsite and into the surrounding area.[3]

---

[1] An excerpt is attached as Ex. 1, FAA *Written Re-evaluation of the 2022 Final Programmatic Environmental Assessment for the SpaceX Starship/Super Heavy Launch Vehicle Program at the Boca Chica Launch Site in Cameron County, Texas* at 2 (internal) (Nov. 2023) ("2023 WR") (full document available at: https://www.faa.gov/media/72816).
[2] *Id.*
[3] *Id.* at 4-5 (internal).

2

Currently, SpaceX has capacity to discharge at least 361,000 gallons per Super Heavy static fire test, launch, or landing,[4] though SpaceX has indicated plans to add additional water tanks, in order to increase the maximum volume of water per event to as much as 422,000 gallons.[5] Of the 422,000 gallons, SpaceX itself estimates that 316,500 gallons would be vaporized, 17,600 gallons would be detained at the vertical launch area ("VLA"), and 87,900 gallons would be discharged outside of the VLA.[6]

The discharge water from the deluge system is polluted, even if the source water SpaceX uses is potable. During static fire tests and rocket launches, the extreme heat causes ablation of metals into the deluge water. The FAA recognizes that an increase in activations of the deluge system, "would increase the cumulative amount of metal that may be ablated and subsequently deposited outside of the VLA."[7]

According to samples of the deluge water taken in May 2024 and June 2024, contaminants that were present in quantities greater than the minimum analytical level ("MAL") included: aluminum, arsenic, barium, hexavalent chromium, copper, mercury, nickel, thallium, zinc, and fluoride.[8] One of the two samples was found to contain very high concentrations of total mercury (113 ug/L), which exceeds TCEQ acute toxicity water quality criterion by two orders of magnitude. Ex. 5, Declaration of Kenneth G. Teague ("Teague Decl.") at ¶ 8. The samples also contained concentrations of total zinc that exceeds the dissolved zinc concentration of the TCEQ

---

[4] *Id.* at 33 (internal).
[5] An excerpt is attached as Ex.3-A (FAA *Draft Tiered Environmental Assessment for SpaceX Starship/Super Heavy Vehicle Increased Cadence at the SpaceX Boca Chica Launch Site in Cameron County, Texas* at 9 (internal) (Jul. 2024) ("2024 DTEA") (full document available at: https://www.regulations.gov/document/FAA-2024-2006-0001).
[6] *Id.* at 33 (internal).
[7] *Id.* at 48 (internal).
[8] An excerpt is attached as Ex. 3-B, SpaceX Application for TPDES Permit No. WQ0005462000 (Jul. 2024), Industrial Wastewater Permit Application Technical Report 1.0 at 21 (internal).

acute toxicity water quality criteria by two orders of magnitude, and concentrations of total copper that may also exceed the TCEQ chronic toxicity water quality criterion. Teague Decl. at ¶¶ 9-10. In any event, the discharges from the deluge system are fully unpermitted.[9]

SpaceX has itself identified several ways in which contaminated discharges from the deluge system reach "waters of the U.S.": overland sheet flow that escapes containment structures; "push out," which is water pushed beyond the boundary of the VLA by rocket thrust; and vaporization in the form of a vapor cloud of approximately 0.6-mile radius.[10] SpaceX's application and draft discharge permit recognize that the receiving waters are "tidal wetlands"[11] Compare, SpaceX's delineated wetlands map below to its deluge impact area map on the next page.



Ex. 2 (2022 Final PEA) at 108-109 (internal).

---

[9] In July 2024, SpaceX submitted an application to TCEQ for a permit authorizing it to discharge industrial wastewater generated by its deluge system. That application remains pending at TCEQ.
[10] Ex. 1 (2023 WR) at 7-8 (internal).
[11] Ex. 3-B, TCEQ Draft Permit, TPDES Permit No. WQ0005462000, at 1 (internal).

This radius of the estimated vapor cloud includes wetlands, delineated by the U.S. Army Corps of Engineers ("USACE") immediately adjacent to the southern edge of the VLA, as well as the South Bay of the Lower Laguna Madre (a navigable waterway).[12]



Ex. 1 (2023 WR) at 9 (internal).

---

[12] Ex. 2 (2022 Final PEA) at 108-109 (internal); Branch Decl. at ¶ 11.

### B.  SpaceX's Activation and Planned Use of the Deluge System

SpaceX first tested its deluge system on July 28, 2023, and conducted static fire tests on at least August 6, 2023, August 25, 2023, October 20, 2023, December 20, 2023, December 29, 2023, April 5, 2024, May 8, 2024, May 29, 2024, and October 8, 2024. SpaceX first used the deluge system during a launch on November 18, 2023 (Starship Flight 2), and then on March 14, 2024 (Starship Flight 3) and on June 6, 2024 (Starship Flight 4, activating the deluge system twice).

The operation of the unpermitted deluge system is expected not only to continue imminently, but also to increase in frequency. SpaceX is currently authorized to launch Starship five times per year, Starship/Super Heavy five times per year (with Starship attached as the second stage of the launch vehicle), and for fifteen annual landings. But SpaceX has requested authorization from FAA to increase annual launches to 25 with associated landings.[13] Additionally, future launches are expected to include attempts by SpaceX to "catch" the booster as it returns to the VLA, meaning SpaceX will activate the deluge system twice in the same launch—at the beginning and also during the "catch" maneuver. Each launch is also preceded by at least one, sometimes multiple, static fire tests.

The most recent SpaceX static fire test occurred on October 8, 2024, during which, SpaceX activated the deluge system twice. The front page of SpaceX's website indicates that Starship's Fifth Flight Test is upcoming (https://www.spacex.com/) "as soon as October 13, pending regulatory approval." This planned launch (and planned use of the deluge system) was confirmed by legal counsel while conferring on this motion.

---

[13] Ex. 3-A (2024 DTEA) at 3.

### C.  EPA and TCEQ Actions to Date

On July 1, 2024, SpaceX applied to TCEQ for an individual TPDES industrial wastewater discharge permit (TX0146251).[14] That permit application remains pending. A public comment deadline is currently scheduled for the date of a public meeting, October 17, 2024 at 7:00 P.M.[15]

On August 13, 2024, SpaceX signed a TCEQ Agreed Order ("AO"), Docket No. 2024-1282-IWD-E,[16] notice of which was published in the Texas Register on August 30, 2024. 49 Tex. Reg. 6816, 6818 (Aug. 30, 2024).  The TCEQ AO is a proposed order, which remains pending and subject to final approval by the TCEQ Commission, the date of which has not been announced.[17]

On September 10, 2024, EPA published a public notice of a proposed administrative penalty order against SpaceX for Clean Water Act Violations.[18] In its proposed Consent Agreement and Final Order ("CAFO"), EPA identified unauthorized discharges from the deluge system on the seven dates, each of which is a violation of Section 301(a) of the CWA.[19]

As of the date of this motion, the EPA CAFO is not final. Pursuant to CWA § 309(g)(4), 33 U.S.C. § 1319(g)(4), and 40 C.F.R. § 22.45(b), the consent agreement is subject to public notice and comment prior to issuance of the proposed Final Order.[20] *See also* 33 U.S.C. § 1319(g)(5). The September 10 notice indicates that the comment deadline is October 21, 2024. Furthermore, the EPA CAFO states explicitly that it only resolves SpaceX's CWA civil penalty liabilities for the violations specifically alleged within it; it does not constitute a permit.[21]

---

[14] Ex. 3-D (EPA CAFO) at 4 (internal).
[15] Ex. 3-C (TCEQ Notice) at 5.
[16] Ex. 3-E (TCEQ AO) at 6.
[17] Ex. 3-E (TCEQ AO) at 5 ("The effective date of this Order is the date it is signed by the Commission.")
[18] Ex. 3-D (EPA Notice) at 1.
[19] Ex. 3-D (EPA CAFO) at 3-4 (internal).
[20] *Id*. at 9 (internal).
[21] *Id*.

## IV.   LEGAL FRAMEWORK

Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA. 33 U.S.C. § 1311(a). Specifically, the CWA establishes the National Pollutant Discharge Elimination System ("NPDES"), under which, NPDES permits may be issued to allow for the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. § 1342. In Texas, TCEQ has authority to issue permits through the Texas Pollutant Discharge Elimination System ("TPDES") program.

TPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. A "discharge of any pollutant" to waters of the U.S. that is not authorized by a permit violates the CWA (33 U.S.C. §§ 1311(a), 1365(f)), and each violation is grounds for enforcement. 33 U.S.C. §§ 1311(a), 1365(f).

The CWA authorizes any citizen to file a civil action against any person who is in violation of an "effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). The term "effluent standard or limitation under this chapter" includes an unauthorized discharge under subsection 1311(a). *Id.* § 1365(f).

The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the violation to the alleged violator, the EPA, and the State in which the violation occurs. 33 U.S.C. § 1365(b)(1)(A). Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B).

## V.    ARGUMENT

### A.  Plaintiff is Likely to Succeed on the Merits of the CWA Claim.

#### i.   Plaintiff has Article III Standing.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a), and Plaintiff Save RGV has Article III standing. "Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

With respect to the first part of the *Hunt* test, at least one member of the plaintiff association must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quotation omitted).

Mary Angela Branch is a member of Save RGV. Branch attests at length to her use of the area surrounding the SpaceX launch site. *See* Ex. 4, Declaration of Mary Angela Branch ("Branch Decl.") at ¶¶ 5-7, 13-14. Branch regularly boats in the South Bay area of the Lower Laguna Madre, within one to one and one-half miles of the SpaceX launch site in order to observe birds and other wildlife that forage in the shallow waters. *Id.* at ¶¶ 6-10. She also attests to regularly visiting the area approximately on Boca Chica Beach about one-quarter to one-half mile south of the SpaceX launch site to observe birds and other wildlife on the beach and in the dunes near the wetlands and tidal flats south of the SpaceX facility. *Id.* at ¶¶ 13-17. She attests that her use and enjoyment of these locations have been diminished by SpaceX launches, and that they will be further diminished with each launch and the associated unauthorized discharge of pollutants from the deluge system,

because these discharges are deposited into the shallow waters where wildlife she enjoys come to forage. *Id*. at ¶¶ 5, 13-15, 17-18.

Branch is also on the board of directors of Save RGV. *Id*. at ¶ 2. She attests that Save RGV is a non-profit membership organization with a purpose that is germane to the requests in this suit, namely that Save RGV is a Texas non-profit corporation that advocates for environmental justice, sustainability and the health and well-being of the Rio Grande Valley community and preserving wildlife habitat. *Id*. ¶ 3. The scope of Save RGV's work includes the area in and around the waterways near the SpaceX Boca Chica Launch Site including, but not limited to, the South Bay of the Lower Laguna Madre. These waterways are impacted by SpaceX's discharge of industrial wastewater from its deluge system, and protecting the environment from unpermitted discharges from SpaceX are precisely the type activities that Save RGV is committed to pursue on behalf of its members. *See id*.

As the U.S. Supreme Court has stated, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (internal quotation marks omitted). The Fifth Circuit has recognized a procedural injury—that is, "the creation of a risk that serious environmental impacts will be overlooked"—as a sufficient "injury in fact" to support standing, provided that the injury alleged is by a plaintiff with a sufficient geographical nexus to the site of the challenged project such that they can expect to suffer whatever environmental consequences the project may have. *See Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 674 (5th Cir. 1992).

The injury alleged by Save RGV and its members is far more than the required "identifiable trifle" the Fifth Circuit requires. *Save Our Cmty. v. U.S. E.P.A.*, 971 F.2d 1155, 1161 (5th Cir. 1992). Their injury is imminent and will be directly caused by SpaceX, since SpaceX is discharging untreated, industrial wastewater without a NPDES or TPDES permit. That discharge could lead directly to the contribution of hazardous pollutants in waters of the U.S. threatening aquatic and aquatic-dependent life, which Save RGV's members enjoy. *See* Teague Decl. at ¶¶ 11-17 (opining to potential impacts to benthic community in the tidal flats and shore birds that feed on them, such as forcing them to forage in areas not impacted by the discharge).

The injury is redressable by the relief sought since complying with the CWA would place limitations on SpaceX's activities, so that its discharges would not degrade water quality beyond a *de minimis* amount or impair existing uses of receiving waters, which are designated as high aquatic life and exceptional aquatic life uses. *See* 30 Tex. Admin. Code § 307.5.[22]

### ii.   *SpaceX is violating the Clean Water Act by discharging industrial wastewater without a NPDES or TPDES permit.*

There is no dispute that SpaceX does not have a NPDES or TPDES permit to cover its discharges from its deluge system. SpaceX is, therefore, knowingly discharging industrial wastewater to waters of the U.S. without a NPDES or TPDES permit each time it activates its deluge system. As previously explained, SpaceX admits that the deluge system discharges industrial wastewater to delineated wetlands to the south of its Boca Chica Launch Site by several methods, including overland sheet flow that escapes containment structures; water pushed out by rocket thrust; and vaporization in the form of an estimated 0.6-mile vapor cloud. The deluge system also discharges industrial wastewater to the South Bay of the Lower Laguna Madre to the north of the Boca Chica Launch Site in the 0.6-mile vapor cloud, at the very least.

---

[22] *See also* Ex. 3-C (TCEQ Notice) at 4.

### *iii.   Neither enforcement action by the EPA nor the State of Texas precludes Save RGV's citizen suit.*

Of the two restrictions on a citizen suit under the CWA § 1365(b), neither precludes Plaintiff's suit. First, Plaintiff has provided the requisite 60 days' notice. *See* Plaintiff's Original Complaint,   Exs. 1 & 2 (ECF 1-2 & 1-3). The second limitation—that no action may be commenced if the EPA or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State—is not applicable here, as neither the EPA nor the TCEQ has brought an action in state or federal court against SpaceX.

The other limitation is found in CWA § 1319(g)(6). This section provides for three types of government actions that, if taken, preclude a civil penalty action under CWA § 1365 (the citizen suit provision) for the same subject, specifically, any violation:

(i)      where the EPA has commenced and is diligently prosecuting an action under subsection § 1319(g);

(ii)     where the State has commenced and is diligently prosecuting an action under a State law comparable to subsection § 1319(g); or

(iii)    where the EPA or State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under subsection § 1319(g) or comparable State law.

33 U.S.C. § 1319(g)(6)(A). However, the limitations in CWA § 1319(g)(6)(A) do <u>not</u> apply if the citizen suit was filed prior to the commencement of one of these actions <u>or</u> notice was given prior to the government commencing action, and the citizen suit was filed before the 120th day after the notice was given. 33 U.S.C. § 1319(g)(6)(B); *Lockett v. E.P.A.*, 319 F.3d 678, 683 (5th Cir. 2003).

Save RGV provided two notices, dated June 4 and July 19. ECF 1-2, 1-3. On August 2, 2024, TCEQ issued a notice of enforcement to SpaceX,[23] and on September 10, 2024, EPA

---

[23] Ex. 6 (TCEQ NOE) at 1.

published notice of its CAFO.[24] Both occurred after Save RGV's notices. The 120th day from Save

RGV's July 19 notice is November 16, 2024. Save RGV filed its complaint on October 9, well

before November 16. This means that no part of Save RGV's citizen suit is precluded by either the

EPA or TCEQ enforcement actions in this matter.

### iv.   Neither EPA nor TCEQ action authorize discharges in lieu of a NPDES or TPDES permit.

#### 1.   Neither EPA nor TCEQ actions are final agency actions.

Regardless of whether the EPA's Consent Agreement and Final Order ("CAFO") or

TCEQ's Agreed Order ("AO") *could* lawfully authorize future discharges absent a NPDES or

TPDES permit (Plaintiff maintains they cannot), neither order is final <u>now</u>, and so any reliance on

them by SpaceX at this time is misplaced for that reason alone. They simply provide no regulation

of SpaceX's use of the deluge system, in accordance with the CWA.

According to the EPA CAFO: "Pursuant to Section 309(g)(4) of the CWA, 33 U.S.C. §

1319(g)(4), and 40 C.F.R. § 22.45(b), this Consent Agreement is subject to public notice and

comment prior to issuance of the proposed Final Order." The comment deadline is October 21.

The TCEQ AO is also "proposed" since it must be approved by the three appointed

Commissioners, at a public meeting, following proper public notice.

#### 2.   Neither EPA nor TCEQ actions constitute a NPDES or TPDES permit, nor may they authorize future discharges.

The Clean Water Act requires all discharges covered by the statute must be in accordance

with a NPDES permit or state-delegated permit, such as Texas's TPDES permit. *See* 33 U.S.C. §

1311(a). It is well recognized that this requirement is "unconditional and absolute." *Puget*

*Soundkeeper All. v. Cruise Terminals of Am., LLC*, No. C14-0476-JCC, 2014 WL 4649952, at *2,

---

[24] Ex. 3-D (EPA CAFO) at 1.

n. 4 (W.D. Wash. Sept. 16, 2014). Both the EPA CAFO and TCEQ AO allege that SpaceX currently lacks a permit for its industrial wastewater discharges from the deluge system.[25]

In addition, the EPA CAFO states plainly that is "is not a permit . . . and shall in no way relieve or affect Respondent's obligations under any applicable federal, state, or local laws, regulations, or permits."[26] The TCEQ AO does not provide any authority for disregarding the CWA's requirement for a permit, yet it does propose to authorize SpaceX to continue to discharge from the deluge system until such time that a permit is obtained or until 300 days after the effective date of AO.[27] The AO is not and cannot be a substitute for the required CWA permit. *Waterkeeper Alliance, Inc. v. United States EPA*, 399 F.3d 486 (2d Cir. 2005) ("The Clean Water Act demands regulation in fact, not only in principle."); *Montgomery Envt'l Coal., Inc. v. U.S. EPA*, 1983 U.S. App. LEXIS 27509, n.6 (D.C. Cir. 1983) (not designated for publication) (explaining that a compliance order does not relieve a permittee from its legal obligation of complying with its NPDES permit and that the permittee may still be liable under a citizen's suit). The same logic applies to any statements made by TCEQ staff in reviewing SpaceX's permit application or preparing a response to comments made on the proposed AO. Bare reassurances by staff that they reviewed SpaceX's permit application are not a legal substitute for a CWA permit.

The CWA prescribes specific procedural and substantive requirements for issuance of a discharge permit, many of which cannot be satisfied by an agreed order or staff's technical review of an application, and have not been satisfied here.

> For example, public notice and comment must be provided for a draft NPDES permit. *See* 33 U.S.C. §§ 1342(a)(3), 1342(b)(3); 40 C.F.R. § 123.25(26)-(33) (listing requirements for an approved state program), § 124.6(a) (draft permit required unless NPDES permit application denied), § 124.6(d) (draft NPDES

---

[25] Ex. 3-D (EPA CAFO) at 3; Ex. 3-E (TCEQ AO) at 2.
[26] Ex. 3-D (EPA CAFO) at 9.
[27] Ex. 3-E (TCEQ AO) at 3

permit must include effluent limitations), § 124.10(a)(1)(ii) (public notice of draft permit required), § 124.10(b) (at least 30 days for public comment required), § 124.11 (interested persons may submit comments and request hearing), § 124.17 (requires response to public comments by issuing agency). NPDES permits are required to have effluent limitations, inter alia, in both their final and draft form. 40 C.F.R. §§ 122.44, 123.25(15), 124.6(d).

*PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429, 458 (W.D. Pa. 2013).

Of significance here is that before SpaceX may receive its individual TPDES permit to authorize the discharge of industrial wastewater, interested persons must be able to submit comments, receive a response to comments from TCEQ, and request a hearing should they disagree with staff's conclusions. 40 C.F.R. §§ 124.11-.12. Texas has incorporated these provisions, pursuant to its delegation of authority from EPA to issue NPDES permits, and to deviate from these requirements, except to make the requirements *more* stringent, would run afoul of this delegation and of the requirements of the CWA. *See* 40 C.F.R. § 123.25(a).

As previously explained, SpaceX's industrial wastewater permit application is still pending—subject to a public comment deadline and a public meeting scheduled for October 17, 2024. It is not until after the comment deadline, that the TCEQ's Executive Director must prepare a response to comments ("RTC"), and may affected persons then request a contested case hearing. The staff of the TCEQ may not issue final approval of SpaceX's permit application if timely hearing requests are filed. Likewise, TCEQ staff may also not bypass the statutorily mandated process to effectively issue their own "temporary authorization" in lieu of a permit.

Not only does TCEQ's AO fail to satisfy the procedural requirements of the State delegated CWA permitting program, but certain technical requirements proposed in the TCEQ AO also fall short of what is required by the CWA. For example, Subsection IV.2.b does not comply with the CWA's self-reporting requirements. *See, e.g.*, 40 C.F.R. §§ 122.44, .48.

Therefore, while the EPA CAFO and the TCEQ AO—once final—*may* constitute a penalty or necessary corrective action for SpaceX's *prior* violations, they cannot authorize *future* discharges under the CWA without a NPDES or TPDES permit.

**B.  Plaintiff Will Suffer Irreparable Injury Absent Injunctive Relief.**

A temporary restraining order and an injunction should issue because irreparable injury to Plaintiff's interests will occur from the discharge of deluge water—untreated industrial wastewater—without a NPDES or TPDES permit. To qualify for a preliminary injunction, Plaintiff must show "some concrete injury or environmental harm resulting from Defendants' actions" that is both actual and imminent. *W. Ala. Quality of Life Coal. v. U.S. Fed. Highway Admin.*, 302 F. Supp. 2d 672, 683-84 (S.D. Tex. 2004). The U.S. Supreme Court has noted that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

Also, absent a preliminary injunction, the wholly unpermitted discharges may continue for many months. The cumulative irreparable harm will undermine this Court's ability to render a meaningful decision. *See Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). Courts have found that the impacts to a relatively small part of a larger ecosystem can constitute irreparable injury. *Sierra Club v. Block*, 614 F. Supp. 134, 137 (E.D. Tex. 1985). In *Callaway*, the Fifth Circuit found that the loss of trees along a river could constitute irreparable harm, even though the total acreage affected was relatively small. *Callaway*, 489 F.2d at 575–576. Thus, it is not the scale of the harm, but whether it is irreparable or irreversible.

Plaintiff Save RGV meets this standard. SpaceX's unlawful use of its deluge system causes polluted and unregulated industrial wastewater to flow into the tidal flats and wetlands south of the SpaceX launch site and north into the South Bay, unique coastal ecosystems that host numerous

threatened and endangered species, including shorebirds, that forage in tidal flats, some of the most significant feeding areas on the Texas Gulf Coast. Teague Decl. at ¶¶ 4-6, 13. Should the discharge contain the high levels of mercury, copper, and zinc reported in the SpaceX permit application, the discharge would cause high rates of acute toxicity or other impacts to benthic organisms, that would, in turn, impact the ability of piping plover and red knot species to forage in this area. *Id*. at ¶¶ 14-17. These are examples of shorebirds Save RGV members come to the area to enjoy. *See* Branch Decl. at ¶ 8, 13-15. Once these types of pollutants are deposited in these very shallow wetlands and tidal flats, and they mingle with waters and soil, they cannot be easily removed or remediated. And where a proposed action will harm a plaintiff environmental group's members' ability to "view, experience, and utilize" an area in its undisturbed state, they suffer irreparable harm. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (irreparable injury from logging that would harm plaintiffs' ability to enjoy area in its undisturbed state);

Moreover, because the TCEQ permit process is not complete, so far, SpaceX's discharges have evaded judicial review and public scrutiny. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 642 (9th Cir. 2004). Considering that these harms to the environment are irreparable and Plaintiff's interests flow from those harms, and that SpaceX's discharges have entirely evaded judicial review and public scrutiny, the Court should issue an injunction to preserve the status quo.

### C.  The Balance of Harms Weights in Favor of an Injunction.

To determine whether injunctive relief is appropriate, courts apply a "traditional balance of the harms analysis." *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 (9th Cir. 2001). If irreparable injury to the environment is probable, the balance of harms will usually favor issuance of an injunction. *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 542 (1987). Though the extent of the harm from SpaceX's discharges may be somewhat unknown (and that is a problem of SpaceX's own making by refusing to obtain a permit prior to discharging), the probability of

injury is high, and the testimony of Save RGV's member, Ms. Branch, is evidence of this. Branch Decl. at ¶¶ 14-15, 18 (sees noticeably less wildlife in dunes since SpaceX launches began), Additionally, the applicable statutory scheme prohibits degradation of water quality beyond a *de minimis* amount. Thus, small amounts of pollutants can contribute to exceeding this standard, and SpaceX's own water quality testing shows that is probable absent strict limitations. *See* Teague Decl. at ¶¶ 8-11.

On the other side, there is no harm to SpaceX in being enjoined from an activity that requires a permit, when it indisputably does not have the required permit. The affected public, including Save RGV members, have not yet had the opportunity to fully engage in the process that they are entitled to under TCEQ's delegated program. Compliance with federal environmental law is more than "merely a 'speed bump' on the road to a predetermined destination." *Blanco v. Burton*, No. CIV.A. 06-3813, 2006 WL 2366046, at *17 (E.D. La. Aug. 14, 2006).

Likewise, SpaceX also requires a license from the FAA to launch, and at the time of this brief, has not received such license. Therefore, any commitment of resources by SpaceX thus far were committed at its own risk. SpaceX also relies on the TCEQ AO to claim authorization to activate the deluge system absent a permit—but in the AO, the TCEQ calculates that the financial benefit to SpaceX launching without a permit (i.e. now, rather than waiting) amounts to less than $2,000.[28] Therefore, any financial harm to SpaceX will be also negligible. Any economic harm does not outweigh the public interest in ensuring that agencies and permittees comply with the CWA. *See, e.g.*, *Idaho Sporting Cong. v. Alexander*, 222 F.3d 562, 569 (9th Cir. 2000). Finally, any injury to SpaceX is further outweighed by Save RGV's strong likelihood of success on the merits. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021).

---

[28] Ex. 3-E (TCEQ AO) at 7 (penalty calculation worksheet).

### D.  The Requested Injunction is in the Public Interest.

The fourth and final factor weighs in favor of granting the injunction to prevent further violations of the CWA. "The public interest is always served by requiring compliance with Congressional statutes." *ADT v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 700 (N.D. Tex. 2015) (citations omitted). The public interest weighs in favor of protecting the environment over avoiding economic harms. *See Am. Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp.2d 230, 261 (D.D.C. 2003). Moreover, the injunctive relief sought by Plaintiff would not only serve to protect the migratory and endemic shorebirds, but would also serve to protect the Boca Chica ecosystem. *See id*. The balance of the harms and the public interest support an injunction.

### E.  The Court Should Waive the Bond Requirement.

Plaintiff respectfully requests that, if the Court grants this motion, the Court waive the security requirement found in Federal Rule of Civil Procedure Rule 65(c) or require only a nominal bond. It is well settled that Rule 65(c) provides the court with discretion to dispense with the security requirement, or requires only a nominal bond, where requiring otherwise would effectively deny access to judicial review.  *People ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1325 (9th Cir. 1985), *amended on other grounds,* 775 F.2d 998 (9th Cir.1985); *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971); *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir. 1954); *Colorado Wild Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1230–31 (D. Colo. 2007). Additionally, "special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute." *Van De Kamp,* 766 F.2d at 1325–26 (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

 Save RGV is a volunteer, non-profit environmental group and would not be able to proceed were a substantial bond required. Branch Decl. at ¶ 4. Exercise of the Court's discretion to waive bond is warranted because Save RGV has limited resources and so, the imposition of the bond

requirement would effectively deny Save RGV access to the courts. Additionally, imposition of a bond would undermine the mechanism in the Clean Water Act that provides for private enforcement, which Save RGV now pursues. Not only would a substantial bond frustrate effective and meaningful judicial review, but it would have a chilling effect on future efforts to vindicate public interests. *See Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975).

## VI.    CONCLUSION

For the reasons stated above, Plaintiff Save RGV respectfully requests that this Court issue relief as requested in its Motion for Temporary Restraining Order and/or Preliminary Injunction.

DATED: October 11, 2024.

Respectfully submitted,

*/s/ Lauren Ice*
Lauren Ice
Attorney-in-charge
State Bar No. 24092560
S.D. Tex. Bar No. 3294105
lauren@txenvirolaw.com
Marisa Perales
(*pro hac vice* motion to be filed)
State Bar No. 24002750
marisa@txenvirolaw.com
**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Counsel for Save RGV*

## **CERTIFICATE OF CONFERENCE**

I certify that on October 9-10, 2024, I conferred with counsel for SpaceX via email and telephone regarding this motion, and the parties could not agree to its disposition.

*/s/ Lauren Ice*
Lauren Ice


## **CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 11, 2024. A copy has also been provided via email to SpaceX's counsel at:

David L. Feinberg, Esq.
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202.344.8278
Fax: 202.344.8300
DLFeinberg@venable.com
SpaceX_Venable@venable.com

*/s/ Lauren Ice*
Lauren Ice

21