# Exhibit D

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION 6

| | | |
|---|---|---|
| IN THE MATTER OF: | § | DOCKET NO. CWA-06-2024-1768 |
| | § | |
| Space Exploration Technologies | § | |
| Corp. | § | COMPLAINT, CONSENT AGREEMENT |
| Respondent | § | AND FINAL ORDER |
| | § | |
| | § | *Class II Administrative Penalty Proceeding under* |
| | § | *Section 309(g) of the Clean Water Act, 33 U.S.C.* |
| Facility Identification | § | *§ 1319(g), and 40 C.F.R. §§ 22.13(b) and 22.18* |
| No. TXU09110 | | |

**CONSENT AGREEMENT**

I. **AUTHORITY AND PARTIES**

1.  This is a Class II civil administrative penalty proceeding under Section 309(g)(1)(A) and 2(B) of the Clean Water Act (CWA), 33 U.S.C. § 1319(g)(1)(A) and 2(B), and 40 C.F.R. Part 22 (Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation/Termination or Suspension of Permits).

2.  Pursuant to Section 309(g) of the CWA, 33 U.S.C. § 1319(g), the Administrator of the United States Environmental Protection Agency (EPA) is authorized to assess administrative penalties against any person who has violated, *inter alia*, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), or who has violated any permit condition or limitation implementing any of such sections in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342. The Administrator of EPA delegated authority to issue this Complaint, Consent Agreement and Final Order to the Regional Administrator of EPA Region 6, who in turn has delegated this authority to the Director of the Enforcement and Compliance Assurance Division (Complainant).

3.  Respondent is Space Exploration Technologies Corp. or SpaceX.

4.  This Consent Agreement and Final Order (CAFO), which contains the elements of a complaint required by 40 C.F.R. § 22.14(a), simultaneously commences and concludes this penalty proceeding, as authorized by 40 C.F.R. §§ 22.13(b) and 22.18(b)(2) and (3). The CAFO is the product of settlement communications.

Docket No. CWA-06-2024-1768
Page 2

NOW THEREFORE, before the taking of any testimony, without adjudication of any issue of fact or law, and upon consent by EPA and Respondent, it is hereby STIPULATED, AGREED, AND ORDERED:

## II. STATUTORY AND REGULATORY FRAMEWORK

5. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes it unlawful for a person to discharge pollutants from a point source into waters of the United States, except as authorized, *inter alia*, by a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342.

6. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), establishes the NPDES program and authorizes the EPA and authorized states to issue permits governing the discharge of pollutants from point sources into waters of the United States. Any such discharge is subject to the specific terms and conditions prescribed in the applicable permit.

7. Section 402 of the CWA, 33 U.S.C. § 1342, authorized states to request approval from EPA to administer their own permit programs for discharges to navigable waters within their jurisdiction. Pursuant to this provision, the State of Texas requested approval from EPA to administer its own permit program for discharges to navigable waters within Texas, and such approval was granted by EPA on September 14, 1998. Therefore, pursuant to the State's permit program, the Texas Commission of Environmental Quality (TCEQ) issues Texas Pollutant Discharge Elimination System (TPDES) permits. Violation of a TPDES permit is a violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

8. Pursuant to Section 309(g)(2)(B) of the CWA, 33 U.S.C. § 1319(g)(2)(B), and 40 C.F.R. Part 19.4, the EPA may assess a Class II civil administrative penalty of up to $26,685 per day of violation, not to exceed $333,552 in total, against any person that has violated Section 301(a) or has violated any permit condition or limitation of a permit issued under Section 402 of the CWA that occurred after November 2, 2015, where penalties are assessed on or after December 27, 2023.

## III. JURISDICTIONAL ALLEGATIONS

9. Respondent is a privately-owned company headquartered in Brownsville, Texas, and therefore, a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10. At all times relevant to this action (all relevant times), Respondent owned or operated the Starbase Launch Pad site (facility) located on the south side of the eastern terminus of State Highway 4 in Cameron County, Texas, (Latitude 25.996454; Longitude -97.154724) and was therefore, an "owner or operator" within the meaning of 40 C.F.R. § 122.2.

11. Respondent agrees that, at all relevant times, EPA possessed jurisdiction over discharges of pollutants from point sources into waters of the United States.

IV. **FACTUAL ALLEGATIONS**

12. At all relevant times, either the water deluge system or the liquid oxygen tank at the facility acted as a "point source" of a "discharge" of "pollutants" to wetlands bordering the facility as follows. The deluge water discharged to the surrounding wetlands is considered an industrial process wastewater. The wetlands bordering the facility are "navigable waters" as defined in the CWA Section 502(7) and thus "waters of the United States." The wetlands are adjacent to and have a continuous surface connection to the Rio Grande river, which is a traditionally navigable water within the meaning of Section 502 of the CWA, 33 U.S.C. § 1362, and 40 C.F.R. § 122.2.

13. Because Respondent owned or operated a facility that acted as a point source of discharges of pollutants to waters of the United States, Respondent and the facility were subject to the CWA and the TPDES.

14. Respondent did not have a TPDES Permit (permit) issued under Section 402 of the CWA, 33 U.S.C. § 1342. At all relevant times, Respondent was not authorized to discharge pollutants from the facility to waters of the United States.

15. On August 25, 2023, EPA transmitted, via e-mail, an information request letter pursuant to Section 308 of the CWA. The letter, signed on August 23, 2023, requested information regarding known unauthorized discharges from the facility to the wetlands bordering the facility.

16. On March 13, 2024, EPA issued Administrative Order CWA-06-2024-1746 citing information on known unauthorized discharges from the facility. EPA asked for information regarding launches in November 2023, March 2024, and June 2024.

17. Responses to the Information Request, Administrative Order, and information gathered from other sources identified unauthorized discharges from 2022 to 2024, including, but not limited to:

   a. On July 11, 2022, Respondent had a liquid oxygen spill which discharged 36,000 gallons of liquid oxygen to the wetlands.
   b. On July 28, 2023, Respondent conducted the first full-up test of the launch pad water deluge system. An estimated 114,000 gallons of water was used in the test. Approximately 45,300 gallons of the deluge water discharged to the wetlands bordering the launch pad.
   c. On August 6, 2023, Respondent conducted a static fire test of the starship super heavy booster utilizing the water deluge system. An estimated 194,500 gallons of water were used in the test. An estimated 78,500 gallons were not captured. 41,500 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 37,000 gallons from the water deluge system discharged to the wetlands.

    d.    On August 25, 2023, Respondent conducted a static fire test of the starship super heavy booster utilizing the water deluge system. An estimated 194,500 gallons of water were used in the test. An estimated 78,500 gallons were not captured. 41,500 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 37,000 gallons from the water deluge system discharged to the wetlands.

    e.    On November 18, 2023, Respondent launched a Starship rocket from the facility. An estimated 180,000 gallons of water from the deluge system were used in the launch. An estimated 72,600 gallons were not captured. 38,400 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 34,200 gallons from the water deluge system discharged to the wetlands.

    f.    On December 29, 2023, Respondent conducted a static fire test of the starship super heavy booster utilizing the water deluge system. An estimated 194,500 gallons of water were used in the test. An estimated 78,500 gallons were not captured. 41,500 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 37,000 gallons from the water deluge system discharged to the wetlands.

    g.    On May 29, 2024, Respondent conducted a static fire test of the starship super heavy booster with the water deluge system. An estimated 194,500 gallons of water were used in the test. An estimated 78,500 gallons were not captured. 41,500 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 37,000 gallons from the water deluge system discharged to the wetlands.

    h.    On June 6, 2024, Respondent launched a Starship rocket from the facility. An estimated 180,000 gallons of water from the deluge system were used in the launch. An estimated 72,600 gallons were not captured. 38,400 gallons of the 78,500 gallons were vaporized by heat and aerodynamic forces from the engines firing. Approximately 34,200 gallons from the water deluge system discharged to the wetlands.

18.    On July 1, 2024, Respondent applied for an individual TPDES Industrial wastewater permit (TX0146251).

19.    On August 13, 2024, Respondent signed a TCEQ Agreed Order, Docket No. 2024-1282-IWD-E, requiring, among other measures, sampling of future discharges at the facility, with specific effluent limitations listed in the Order. The Agreed Order is subject to public comment prior to Commission approval.

20.    Each unauthorized discharge referenced in Paragraph 17 is a violation section 301(a) of the CWA, 33 U.S.C. § 1311(a).

Docket No. CWA-06-2024-1768
Page 5

## V.     ADMINISTRATIVE PENALTY

21.     In consideration of the penalty factors of Section 309(g) of the CWA, 33 U.S.C. § 1319(g), Respondent agrees to a civil penalty in the amount of one hundred forty-eight thousand three hundred and seventy-eight dollars ($148,378) (Assessed Penalty) within thirty (30) days after the date of the Final Order ratifying this Agreement is filed with the Regional Hearing Clerk.

22.     Respondent shall pay the Assessed Penalty and any interest, fees, and other charges due using any method, or combination of appropriate methods, as provided on the EPA website: https://www.epa.gov/financial/makepayment. For additional instructions see: https://www.epa.gov/financial/additional-instructions-making-payments-epa.

23.     When making a payment, Respondent shall:

   a.   Identify every payment with Respondent's name and the docket number of this Agreement, CWA-06-2024-1768,

   b.   Concurrently with any payment or within 24 hours of any payment, Respondent shall serve proof of such payment to the following person(s):

   Regional Hearing Clerk (ORCD)
   U.S. EPA, Region 6
   1201 Elm Street, Suite 500
   Dallas, TX 75270-2102
   vaughn.lorena@epa.gov

   Roberto Bernier
   Supervisor, Municipal & Industrial Wastewater Section (ECDWM)
   U.S. EPA, Region 6
   1201 Elm Street, Suite 500
   Dallas, TX 75270-2102
   bernier.roberto@epa.gov

   Scott McDonald
   Manager, Water Legal Branch (ORCEW)
   U.S. EPA, Region 6
   1201  Street, Suite 500
   Dallas, TX 75270-2102
   mcdonald.scott@epa.gov

   and

Docket No. CWA-06-2024-1768
Page 6

> U.S. Environmental Protection Agency
> Cincinnati Finance Center
> Via electronic mail to:
> cinwd_acctsreceivable@epa.gov
>
> "Proof of payment" means, as applicable, a copy of the check, confirmation of credit card or debit card payment, or confirmation of wire or automated clearinghouse transfer, and any other information required to demonstrate that payment has been made according to EPA requirements, in the amount due, and identified with the appropriate docket number and Respondent's name.

c. Interest, Charges, and Penalties on Late Payments. Pursuant to 31 U.S.C. § 3717, 31 C.F.R. § 901.9, and 40 C.F.R. § 13.11, if Respondent fails to timely pay the full amount of the Assessed Penalty per this Agreement, EPA is authorized to recover, in addition to the amount of the unpaid Assessed Penalty, the following amounts.

   i. Interest. Interest begins to accrue from the Filing Date. If the Assessed Penalty is paid in full within thirty (30) days, interest accrued is waived. If the Assessed Penalty is not paid in full within thirty (30) days, interest will continue to accrue until any unpaid portion of the Assessed Penalty as well as any interest, penalties, and other charges are paid in full. To protect the interests of the United States the rate of interest is set at the IRS large corporate underpayment rate, any lower rate would fail to provide Respondent adequate incentive for timely payment.

   ii. Handling Charges. Respondent will be assessed monthly a charge to cover EPA's costs of processing and handling overdue debts. If Respondent fails to pay the Assessed Penalty in accordance with this Agreement, EPA will assess a charge to cover the costs of handling any unpaid amounts for the first thirty (30) day period after the Filing Date. Additional handling charges will be assessed every thirty (30) days, or any portion thereof, until the unpaid portion of the Assessed Penalty as well as any accrued interest, penalties, and other charges are paid in full.

   iii. Late Payment Penalty. A late payment penalty of six percent (6%) per annum, will be assessed monthly on all debts, including any unpaid portion of the Assessed Penalty, interest, penalties, and other charges, that remain delinquent more than ninety (90) days. Any such amounts will accrue from the Filing Date.

d. Late Penalty Actions. In addition to the amounts described in the prior Paragraph, if Respondent fails to timely pay any portion of the Assessed Penalty, interest, or other charges and penalties per this Agreement, EPA may take additional actions. Such actions EPA may take include, but are not limited to, the following.

      i. Refer the debt to a credit reporting agency or a collection agency, per 40 C.F.R. §§ 13.13 and 13.14.

      ii. Collect the debt by administrative offset (i.e., the withholding of money payable by the United States government to, or held by the United States government for, a person to satisfy the debt the person owes the United States government), which includes, but is not limited to, referral to the Internal Revenue Service for offset against income tax refunds, per 40 C.F.R. Part 13, Subparts C and H.

      iii. Suspend or revoke Respondent's licenses or other privileges, or suspend or disqualify Respondent from doing business with EPA or engaging in programs EPA sponsors or funds, per 40 C.F.R. § 13.17.

      iv. Refer this matter to the United States Department of Justice for litigation and collection, per 40 C.F.R. § 13.33.

e. **Allocation of Payments.** Pursuant to 31 C.F.R. § 901.9(f) and 40 C.F.R. § 13.11(d), a partial payment of debt will be applied first to outstanding handling charges, second to late penalty charges, third to accrued interest, and last to the principal that is the outstanding Assessed Penalty amount.

f. **Tax Treatment of Penalties.** Penalties, interest, and other charges paid pursuant to this Agreement shall not be deductible for purposes of federal taxes.

24. Pursuant to 26 U.S.C. § 6050X and 26 C.F.R. § 1.6050X-1, EPA is required to send to the Internal Revenue Service (IRS) annually, a completed IRS Form 1098-F ("Fines, Penalties, and Other Amounts") with respect to any court order or settlement agreement (including administrative settlements), that require a payor to pay an aggregate amount that EPA reasonably believes will be equal to, or in excess of, $50,000 for the payor's violation of any law or the investigation or inquiry into the payor's potential violation of any law, including amounts paid for "restitution or remediation of property" or to come "into compliance with a law." EPA is further required to furnish a written statement, which provides the same information provided to the IRS, to each payor (i.e., a copy of IRS Form 1098-F). Failure to comply with providing IRS Form W-9 or Tax Identification Number (TIN), as described below, may subject Respondent to a penalty, per 26 U.S.C. § 6723, 26 U.S.C. § 6724(d)(3), and 26 C.F.R. § 301.6723-1. In order to provide EPA with sufficient information to enable it to fulfill these obligations, EPA herein requires, and Respondent herein agrees, that:

      a) Respondent shall complete an IRS Form W-9 ("Request for Taxpayer Identification Number and Certification"), which is available at https://www.irs.gov/pub/irs-pdf/fw9.pdf;

      b) Respondent shall therein certify that its completed IRS Form W-9 includes Respondent's correct TIN or that Respondent has applied and is waiting for issuance of a TIN;

Docket No. CWA-06-2024-1768
Page 8

    c)     Respondent shall email its completed Form W-9 to EPA's Cincinnati Finance Center at sherrer.dana@epa.gov, within 30 days after the Final Order ratifying this Agreement is filed, and EPA recommends encrypting IRS Form W-9 email correspondence; and

    d)     In the event that Respondent has certified in its completed IRS Form W-9 that it has applied for a TIN and that TIN has not been issued to Respondent within 30 days after the Effective Date, then Respondent, using the same email address identified in the preceding sub- paragraph, shall further:

        i.     notify EPA's Cincinnati Finance Center of this fact, via email, within 30 days after the 30 days after the Effective Date of this Order per paragraph 32; and

        ii.     provide EPA's Cincinnati Finance Center with Respondent's TIN, via email, within five (5) days of Respondent's issuance and receipt of the TIN.

25.     Respondent shall not, and shall not allow any other person to, deduct any penalties and interest paid under this CAFO from federal, state, or local taxes.

26.     Pursuant to Section 309(g)(9) of the CWA, 33 U.S.C. § 1319(g)(9), if Respondent fails to pay the assessed penalty on time, the EPA may request the U.S. Department of Justice to bring a civil action to recover the overdue amount, plus interest at currently prevailing rates from the Effective Date of this CAFO. In such an action, the validity, amount, or appropriateness of the assessed penalty shall not be subject to review. In addition to any assessed penalty and interest, Respondent shall pay attorney fees, costs for collection proceedings, and a quarterly nonpayment penalty, which shall equal 20% of the aggregate amount of Respondent's penalties and nonpayment penalties that are unpaid as of the beginning of such quarter, for each quarter during which such failure to pay persists. The EPA may also take other debt collection actions as authorized by law, including, but not limited to, the Debt Collection Act, 33 U.S.C. § 3711, and 33 C.F.R. Part 13.

## VI.   APPLICABILITY

27.     This CAFO shall apply to and be binding on Respondent, Respondent's officers, directors, partners, agents, employees, contractors, successors, and assigns. Action or inaction of any persons, firms, contractors, employees, agents, or corporations acting under, through, or for Respondent shall not excuse any failure of Respondent to fully perform its obligations under this CAFO. Changes in ownership, real property interest, or transfer of personal assets shall not alter Respondent's obligations under this CAFO.

Docket No. CWA-06-2024-1768
Page 9

## VII. RESPONDENT'S ADMISSIONS AND WAIVERS

28. In accordance with 40 C.F.R. § 22.18(b)(2), for the purpose of this proceeding only, Respondent:

   a. admits the jurisdictional allegations set forth in Section III of the CAFO;

   b. neither admits nor denies specific factual allegations set forth in Section IV of the CAFO;

   c. consents to all conditions specified in this CAFO and to the assessment of the civil administrative penalty set forth in Section V of the CAFO;

   d. waives any right to contest the allegations set forth in Section III and IV of this CAFO; and

   e. waives its right to appeal this proposed Final Order.

## VIII. RESERVATION OF RIGHTS

29. In accordance with 40 C.F.R. § 22.18(c), full payment of the penalty set forth in this CAFO only resolves Respondent's CWA civil penalty liabilities for the violations specifically alleged herein and does not in any case affect the right of the EPA to pursue appropriate injunctive or other equitable relief or criminal sanctions for any violations of law.

30. This CAFO is not a permit or modification of any existing permit issued pursuant to any federal, state, or local laws or regulations, and shall in no way relieve or affect Respondent's obligations under any applicable federal, state, or local laws, regulations, or permits.

## IX. ATTORNEYS FEES AND COSTS

31. Unless otherwise specified, each party shall bear its own attorney's fees and costs.

## X. EFFECTIVE DATE AND TERMINATION

32. In accordance with C.F.R. §§ 22.18(b)(3) and 22.31(b), the Effective Date of this CAFO is the date that the Final Order, having been signed by the Regional Judicial Officer, is filed with the Regional Hearing Clerk. This CAFO shall terminate when Respondent has complied with the requirements of this CAFO in full.

## XI. PUBLIC NOTICE

33. Pursuant to Section 309(g)(4) of the CWA, 33 U.S.C. § 1319(g)(4), and 40 C.F.R. § 22.45(b), this Consent Agreement is subject to public notice and comment prior to issuance of the proposed Final Order. Complainant reserves the right to withhold or withdraw consent of this Consent Agreement if public comments disclose relevant and material information that was not considered by Complainant in

Docket No. CWA-06-2024-1768
Page 10

entering into this Consent Agreement. Respondent may withdraw from this Consent Agreement only upon receipt of written notice from EPA that it no longer supports entry of this Consent Agreement.

34. Pursuant to Section 309(g)(1) of the CWA, 33 U.S.C. § 1319(g)(1), the EPA has consulted with the State of Texas regarding this penalty action.

For Respondent SpaceX

9-5-2024
Date

[signature]
Sheila McCorkle
V.P., Starship Legal and Regulatory

For Complainant the U.S. Environmental Protection Agency, Region 6

Date

Cheryl T. Seager, Director
Enforcement and
  Compliance Assurance Division

Docket No. CWA-06-2024-1768
Page 11

## **FINAL ORDER**

IT IS HEREBY ORDERED that this Consent Agreement and Final Order (U.S. EPA Docket No. CWA- 06-2024-1768) be entered, and that Respondent shall pay a civil penalty in the amount of o one hundred forty-eight thousand three hundred and seventy-eight dollars ($148,378) in accordance with the terms of this Consent Agreement and Final Order.

_____          _____
Date                                                                   Thomas Rucki
                                                                             Regional Judicial Officer
                                                                             U.S. EPA, Region 6