Case 1:24-cv-00148   Document 24   Filed on 11/21/24 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
November 21, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| SAVE RGV, § | |
| "Plaintiff," § | |
| § | |
| v. § | Civil Action No. 1:24-cv-00148 |
| § | |
| SPACE EXPLORATION § | |
| TECHNOLOGIES CORP, § | |
| "Defendant." § | |

## ORDER

Before the Court are the following:

- Plaintiff's "Motion for Temporary Restraining Order and/or Preliminary Injunction" ("Motion") (Dkt. No. 5),

- Defendant's "Amended Opposition to Plaintiff's Motion for Preliminary Injunction or Temporary Restraining Order" ("Response") (Dkt. No. 14),[1]

- Plaintiff's "Reply to Defendant's Amended Opposition to Plaintiff's Motion for Preliminary Injunction or Temporary Restraining Order" (Dkt. No. 19, and

- Defendant's "Sur-Reply in Further Response to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction" (Dkt. No. 21).

For the reasons below, Plaintiff's Motion (Dkt. No. 5) is **DENIED**.

### I.   BACKGROUND

Plaintiff is a Texas nonprofit corporation that advocates for the environment in the Rio Grande Valley. Dkt. No. 1. Defendant is the world's leading commercial space transportation company and an essential part of the U.S. space program. Dkt. No. 14. Defendant owns and operates a private spaceport in Boca Chica, Texas, where it is developing its Starship-Super Heavy Launch System. *Id.*

At the beginning of the Starship-Super Heavy Launch System's development, it became evident that a deluge water system was necessary to protect the launch site and surrounding areas during launches. *Id.* A deluge water system sprays large quantities of potable water at the base of the spacecrafts during launch to prevent fires and reduce the dispersal of dust and debris. *Id.*

---

[1] The Court adopts the exhibits provided in Defendant's original Response. *See* Dkt. No. 8.

1

Because of these dangers, Defendant cannot launch its spacecrafts without the deluge water system. *Id.*

In good faith attempts to use its deluge water system in compliance with the Clean Water Act (CWA), Defendant first obtained the Texas Multi Sector General Permit (Texas MSGP) from the Texas Commission on Environmental Quality (TCEQ). *Id.* TCEQ visited Defendant's property—where Defendant explained the deluge system, demonstrated it, and then walked the site. *Id.* TCEQ raised no concerns that the system failed to meet the necessary standards and issued a Texas MSGP. *Id.* Thus, Defendant began to use the deluge system—complying with all the requirements TCEQ set forth in their Pollution Prevention Plan. *Id. See also* Dkt. No. 8-8.

TCEQ later realized that the Texas MSGP did not apply to Defendant's discharge activity and began to work with Defendant to correct the mistake. Dkt. No. 12. *See also* Dkt. No. 8-18. Accordingly, Defendant applied for the correct permit—the Individual Texas Pollutant Discharge Elimination System Permit (Individual Permit)—and entered an Agreed Order with TCEQ. Dkt. No. 8-18; Dkt. No. 8-19. First, Defendant was required to pay a significant civil penalty. Dkt. No. 8-18. Second, TCEQ completed a technical review of Defendant's Individual Permit application and determined that the deluge water system does not cause adverse risk to the environment. *Id.* Third, TCEQ created new reporting requirements for Defendant to comply with the Individual Permit. *Id.* Finally, TCEQ permitted Defendant to continue using the deluge system pending approval of their application. *Id.*

Now, Plaintiff seeks an injunction against Defendant's use of the deluge water system because Defendant has not yet obtained the Individual Permit required by the CWA. Dkt. No. 5.

## II. LEGAL STANDARD

### A. PRELIMINARY INJUNCTION

Preliminary injunctions are "extraordinary remedies that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 269 (5th Cir. 2024). The moving party must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Id.*

### B. TEMPORARY RESTRAINING ORDER

The temporary restraining order issue is moot.[2]

### III. DISCUSSION

Plaintiff's likelihood of success depends on a future act, Defendant's ability to obtain the correct government permit. But Plaintiff fails to show a substantial threat of irreparable injury that outweighs the harm that will result if an injunction is granted. An injunction is therefore not a proper remedy.

Under the CWA, one is required to obtain a National Pollution Discharge Elimination System ("NPDES") permit to discharge pollutants into navigable waters. 33 U.S.C. § 1342. The NPDES permit system is implemented in Texas through TCEQ. *See* Tex. Water Code § 26.017(5). Any "discharge of any pollutant" into navigable waters without an NPDES permit violates the CWA. 33 U.S.C. § 1311(a). Additionally, any discharge that does not comply with the issued permit violates the CWA. *Id.*

As relevant here, TCEQ issues two permits to facilities seeking to make discharges into navigable waters: the Texas MSGP and the Individual Permit. Under the Texas MSGP, a facility may obtain authorization for stormwater discharges and certain specified non-stormwater discharges if the Standard Industrial Classification (SIC) code that describes said facility is listed in Part II, Section A.1(b) and in Part V of the Texas MSGP.[3] All other facilities must seek a different permit, such as the Individual Permit.

Defendant may not obtain authorization for its non-stormwater discharges under the Texas MSGP because the Texas MSGP does not list the launching and returning of spacecrafts within its applicable SIC Codes. Moreover, if the launching and returning of spacecrafts were intended to be included within the Texas MSGP, Part V of the permit would require specific reporting related to this activity.

That Defendant's industrial activity is not covered by the Texas MSGP is made further evident by the reporting shortfalls of the Texas MSGP as it relates to the launching and returning of spacecrafts. The Texas MSGP lists reporting requirements based on the Sector that a particular industrial activity falls within. *See* TPDES General Permit No TXR050000 Part V. A review of the reporting requirements for Sector AB shows that these reports are based on common pollutants

---

[2] The Court assumes that Plaintiff moved for a temporary restraining order to stop Defendant's October 13 launch..
[3] *See* TPDES General Permit No. TXR050000 Part II, Section A.1(a)(1) and Section A.6. (effective 8/14/2021).

3

associated with manufacturing processes. *See id.* at Sector AB. It does not include reporting requirements for pollutants associated with every activity that might be performed with the different equipment or machinery listed under the section *after* it is manufactured, such as the launching of said equipment and machinery.[4]

In conclusion, Defendant's industrial activity is not covered by the Texas MSGP and Defendant is required to obtain an Individual Permit for the use of its deluge system.[5] Any discharge into navigable waters from Defendant's deluge system, without the Individual Permit, is a violation of the CWA.

### A. PLAINTIFF'S REQUEST FOR AN INJUNCTION IS NOT APPROPRIATE

Given Defendant's compliance with all the requirements under the TCEQ's Agreed Order, Plaintiff cannot allege sufficient harm to outweigh the devastating impacts of granting an injunction.

The power to issue an injunction to ensure compliance with a statute hardly suggests an absolute duty to do so under all circumstances, and "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of the law." *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (finding that District Court was not required to issue an injunction against Defendant under the Federal Water Pollution Control Act (FWPCA) when Defendant had a pending permit application, their "technical violations" were not causing any "appreciable harm" to the environment, and lesser remedies such as civil penalties were available and more appropriate). Instead, a court should weigh the harm of not granting an injunction against the harm of granting it and rule as equity dictates. *See id.* at 312. An injunction is an extreme equitable remedy inappropriate where mere technical violations are presented. *Id.* at 311-12.

While Defendant technically obtained the wrong permit for their activities, Defendant has collaborated with TCEQ to correct this mistake. *See* Dkt. No 8-16. Defendant, importantly, entered into an Agreed Order with TCEQ in which: (1) Defendant paid a significant civil penalty, (2) Defendant applied for the Individual Permit, (3) TCEQ completed a technical review of Defendant's permit application and determined that the deluge water system does not cause

---

[4] For example, Hexavalent Chromium is a dangerous pollutant common in the launching of spacecraft that is not common in the manufacturing process or listed in Part V of the Texas MSGP.

[5] This Court need not address parties' arguments about whether Defendant's Non-Stormwater Discharges fall within Part II, Section A.6 of the Texas MSGP because Defendant does not meet the prerequisites under Part II, Section A.1. *See* TPDES General Permit No TXR050000 Part II.

4

adverse risk to the environment, and (4) TCEQ permitted Defendant to continue using its deluge water system pending approval of their application. Dkt. No. 8-18.

The evidence also suggests that Defendant's technical violations are not causing any appreciable harm to the environment. The deluge water system has been reviewed by multiple government agencies, including the Federal Aviation Administration (FAA), the U.S. Fish and Wildlife Service (FWS), and TCEQ. The FAA found that there would be no significant effects on the environment or resources. Dkt. No. 8-10. The FWS found that the use of the deluge system could decrease the risk of harm to species during launches because of flushing behaviors. Dkt. No. 8-11. And, most significantly, TCEQ found that Defendant should be able to continue using the deluge system pending approval of their new permit application because there are no significant environmental effects. Dkt. No. 8-18.[6]

The significant harm that would occur if an injunction were to issue greatly outweighs any technical harm Plaintiff suffers. The deluge system is integral to launch activity, and without it, Defendant cannot launch. Dkt. No. 8 at pg. 5. Being unable to launch would create various consequences for not only Defendant, but also the public at large. It would significantly delay and possibly destroy Defendant's contracts with NASA to further the Artemis Program and Human Landing System Program—worth billions of dollars. Dkt. No. 8-14. It would impact national security by halting the "Rocket Cargo" program under the Vanguard Initiative and delaying progress in Defendant's Starlink/Starshield programs—relied on by multiple government agencies including the Department of Defense. *Id.* And, it would hinder Defendant's ability to provide disaster relief to those in need—such as those impacted by Hurricanes Helene and Milton. *Id.* These very real consequences significantly outweigh any technical harm in Defendant operating its deluge system under its Agreed Order with TCEQ.

Lesser remedies are available and more appropriate here. If a less drastic remedy redresses the injury, no recourse to the additional and extraordinary relief of an injunction is warranted. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). The CWA provides for lesser remedies such as fines and criminal penalties—as shown by Defendant's payment of roughly $150,000 in civil penalties to TCEQ. 33 USCS § 1319; Dkt. No 8-18. These kinds of remedies are

---

[6] *Also see* Dkt. Nos. 8-12 and 8-22, showing that all tests of the water used in Defendant's deluge system are below the effluent limits.

far more appropriate given Defendant's good faith mistake, their compliance with TCEQ, and the balance of hardships.

The purpose of the CWA is to ensure the integrity of the Nation's waters, not the permit process. TCEQ and Defendant have come to a resolution that does exactly what the CWA was designed to do—protect the integrity of the Nation's waters. This Court will not upend that resolution over a technical violation.

## IV.   CONCLUSION

For these reasons, Plaintiff's Motion (Dkt. No. 5) is **DENIED**. Defendant is hereby **ORDERED** to continue the process for obtaining an Individual Permit through TCEQ, comply with any requirements under the Agreed Order with TCEQ, and promptly notify this Court of any developments related to their permit application.

Signed on this 21st day of November 2024.

Rolando Olvera
United States District Judge